UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NORBERT JACKSON,

                        Petitioner,

      -vs-

JAMES CONWAY, Superintendent Attica
Correctional Facility,

                 Respondent.
_____

**DECISION AND ORDER**
No. 03-CV-0337(VEB)

## INTRODUCTION

Petitioner, Norbert Jackson ("Jackson"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1998 conviction in Monroe County Court on charges of burglary, robbery and criminal possession of a weapon. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At about 1:00 a.m. on July 18, 1997, Linda Noble was returning to her home at 206 Frost Avenue from her job. As she was bringing bags of groceries up onto the porch, several armed and masked men forced their way into her home. The first intruder placed a gun to Linda's head and repeatedly asked "where was the money?" The men forced Linda at gunpoint into the basement and onto the basement floor, repeatedly inquiring where the money was located. The men also forced Jerald Noble, Linda's brother; Lula Noble, Linda's seventy-six year-old mother; and a one-year-old niece into the basement. One perpetrator threatened, "All you bitches is going to die, kill all of you [*sic*]." The burglary came to an end when one of the perpetrators went upstairs, noticed the presence of police officers outside, and yelled, "Heat!" The gunmen then

exited the house and fled in various directions.

As he responded to the scene of the crime, Officer Ward yelled for the men fleeing the building to stop, but they ignored him. Ward chased one of the men across Frost Avenue and westbound up Ruff Alley; at that time, Ward estimated that he was about fifteen to eighteen feet from the suspect, a male black wearing black clothing and holding a medium-sized silver handgun in his right hand. After about a minute, the suspect (Jackson) stopped running because he was out of breath. The police apprehended him without incident, and Jackson stated that he would show the officers where he had discarded his gun. Jackson was then immediately returned to 206 Frost Avenue where a show-up was conducted. Linda Noble told the police, "That's him. I recognize his pants and I recognize his cap." Lula Noble similarly identified Jackson, stating, "That's him, that's him. I recognize his clothes."

Following the identification procedure, Jackson was transported to the public safety building where he was advised of his *Miranda* rights. Jackson agreed to waive his rights and speak to the police, relating to them his involvement in the home invasion at 206 Frost Avenue. Jackson's statement was reduced to writing and he read it; however, he refused to initial or sign it. Jackson subsequently was charged with one count of first degree burglary (N.Y. Penal Law § 140.30(1)); two counts of first degree robbery (N.Y. Penal Law § 160.15(4)); one count of second degree criminal possession of a weapon (N.Y. Penal Law § 265.03); and one count of third degree criminal possession of a weapon (N.Y. Penal Law § 265.02(4)). After a jury trial held in Monroe County Court (Bristol, J.), Jackson was convicted on February 2, 1998, as charged in the indictment. He was sentenced as a second felony offender to concurrent terms of imprisonment, the longest of which was twenty-five years.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed Jackson's conviction on direct appeal. *People v. Jackson*, 281 A.D.2d 906, 723 N.Y.S.2d 771 (App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to appeal. *People v. Jackson*, 96 N.Y.2d 920, 758 N.E.2d 662, 732 N.Y.S.2d 636 (N.Y. 2001). Jackson collaterally attacked his conviction by means of an application for a writ of error *coram nobis*; this was summarily denied by the Appellate Division. *People v. Jackson*, 296 A.D.2d 873, 745 N.Y.S.2d 736 (App. Div. 4th Dept. 2002), *lv. denied*, 99 N.Y.2d 655, 790 N.E.2d 293, 760 N.Y.S.2d 119 (N.Y. 2003).

Jackson has filed the instant habeas petition in which he asserts the following grounds for habeas relief: (1) trial counsel was ineffective in failing to object to the court's jury instruction on reasonable doubt; (2) trial counsel was ineffective in failing to object to prosecutorial misconduct; (3) trial counsel was ineffective in failing to request a circumstantial evidence charge; (4) the evidence was legally insufficient to support the conviction; and (5) appellate counsel was ineffective in failing to argue trial counsel's ineffectiveness on direct appeal.

For the reasons set forth below, the petition is dismissed.

## DISCUSSION

**Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

## Merits of the Petition

### 1.     Ineffective assistance of trial counsel

#### a.     Legal standard

To obtain habeas relief based on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must satisfy a two-part test. First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, the petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second, the petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To establish the "prejudice" prong of the *Strickland* test, the petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. *Id.* at 694.  The issue of prejudice need not be addressed, however, if the petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

#### b.     Alleged grounds of ineffectiveness

##### i.     Failure to object to the trial court's instruction on reasonable doubt

The Due Process Clause of the Fourteenth Amendment protects state-court defendants from conviction unless the prosecution "persuade[s] the factfinder 'beyond a reasonable doubt' of the facts necessary to establish" each element of the offense charged. *Vargas v. Keane*,

86 F.3d 1273, 1276 (2d Cir. 1996) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993)

(citations omitted) and citing *In re Winship*, 397 U.S. 358, 364 (1970)). As the Second Circuit

has explained, a jury instruction that permits conviction on a lesser standard, such as by shifting

the burden of proof from the prosecution to the defendant, or by suggesting that a higher degree

of doubt than "reasonable doubt" is necessary for acquittal, is constitutionally deficient. *Id.*

However, "not every unhelpful, unwise, or even erroneous formulation of the concept of

reasonable doubt in a jury charge renders the instruction constitutionally deficient." *Id.* Rather,

the reviewing court must examine the jury instruction "as a whole," and "assess 'whether there is

a reasonable likelihood that the jury understood the instructions to allow conviction based on

proof insufficient[ to meet' the standard of proof beyond a reasonable doubt[.]" *Id.* (quoting

*Victor v. Nebraska*, 511 U.S. 1, 6 (1994) and citing *Chalmers v. Mitchell*, 73 F.3d 1262, 1267

(2d Cir. 1996) ("Sometimes, erroneous portions of the jury instructions are offset when

considered in context or explained by the trial court in later sections of the instruction. [At]

[o]ther times, a seemingly innocuous incorrect statement becomes extremely damaging when

coupled with other sections of the jury instructions or with improper conduct by counsel during

the trial.") (citations omitted in original) (alterations in original)).

　　　Jackson contends that trial counsel was ineffective in failing to object to the trial court's

instruction on reasonable doubt, which he contends was erroneous in two aspects: (1) it

"improperly impl[ied] that each Juror should be able to articulate the reasons for any doubt to

their fellow Jurors as well as to their-selves [*sic*]" and (2) it "further mislead the Jury to believe

that a reasonable doubt can be based, and have its genesis in a feeling, as long as it gives rise to a

fruitful thought." Petitioner's Memorandum of Law at 5 (Docket #1). Jackson quotes the trial

> Reasonable doubts may not be based on emotional feeling or gut reaction or intuition or hunches, what ever [*sic*] terms you apply to guess work or subconscious feelings give rise to some thoughtful, some articulable, reasonable reflection on an evaluation of the evidence or lack of evidence in the case.

Memorandum of Law, Statement of Facts,[1] attached to Petition (Docket #1) (quoting T.723).[2]

Turning first to the trial court's alleged direction that a juror should be able to "articulate" his or her "reasonable doubt," this statement is a variation on New York's pattern jury instructions, which define reasonable doubt in part as "a doubt for which some reason can be given." *Vargas*, 86 F.3d at 1277 (quoting 1 CRIMINAL JURY INSTRUCTIONS (New York) § 3.07, at 92 (1983) and citing *People v. Malloy*, 55 N.Y.2d 296, 300, 303, 449 N.Y.S.2d 168, 170, 171, 434 N.E.2d 237, 238-39, 239-40 (holding that charge defining reasonable doubt as "a doubt for which you can conscientiously express a reason" was "neither confusing nor inaccurate"), *cert. denied*, 459 U.S. 847, 103 S. Ct. 104, 74 L. Ed.2d 93 (1982); *Leecan v. Lopes*, 893 F.2d 1434, 1443 (2d Cir.) (rejecting habeas challenge to Connecticut trial court's definition of reasonable doubt as "a doubt for which a reasonable man can give a valid reason"), *cert. denied*, 496 U.S. 929 (1990)). Thus, even if had trial counsel objected, the trial court in all likelihood would have overruled the objection since the challenged language is entirely appropriate as a matter of New York state law.

Moreover, there was no error of Federal constitutional law sufficient to justify habeas relief. In *Vargas*, the Second Circuit reiterated that "instructions tying 'reasonable doubt' to a doubt 'for which you can give a reason'–or, in the more passive formulation, 'for which a reason

---

[1]     Petitioner's Memorandum of Law does not contain page numbers.

[2]     Citations to "T.__" refer to the trial transcript.

can be given'–may well be unwise, because of the possibility that such an instruction will

'intimidate a juror by suggesting that he may be called upon to explain his doubts.'" 86 F.3d at

1277 (quoting *United States v. Davis*, 328 F.2d 864, 867 (2d Cir. 1964)). The Second Circuit

went on to note that it nevertheless had sustained the defendant's conviction in *Davis*, despite the

instruction defining reasonable doubt as "a doubt for which you can give a reason." The Second

Circuit observed that although some of its "decisions . . . have held that the instruction here

given is 'not approved' and 'perhaps unwise' . . . [the instruction] is 'not erroneous.'"*Davis*, 328

F.3d at 867 (quoting *United States v. Woods*, 66 F.2d 262, 265 (2d Cir. 1933) ("The court

charged that a reasonable doubt was one for which a reason could be assigned. While we do not

approve such a definition, it has in this circuit been held not to be erroneous.") (citations

omitted)); *see also United States v. Kelly*, 349 F.2d 720, 764 (2d Cir. 1965) (approving charge

that reasonable doubt is "a doubt for which a reason can be given"), cert. denied, 384 U.S. 947,

86 S.Ct. 1467 (1966); *Marshall v. United States*, 197 F. 511, 512-513 (2d Cir.) ("There was no

error in charging the jury that 'by the term reasonable doubt is meant not a capricious doubt, but

a substantial doubt-a doubt that you can give a reason for if the court called on you to give one.'

The definition of 'reasonable doubt' as being a doubt for which a reason can be given is

frequently adopted by trial judges. The criticism that the charge carried with it an implied threat

that the jury might be called upon to explain to the court the reasons which induced them to

acquit if they found a verdict of not guilty, is hypercritical."), *cert. denied*, 226 U.S. 607 (1912)).

Thus, although the Second Circuit decisions discussed above have disapproved of charges tying

"reasonable doubt" to a doubt for which a juror "can give a reason," or, in the more passive

formulation, "for which a reason can be given," they have not held such language to be

-7-

erroneous as a matter of Federal constitutional law.

Moreover, even if there were error under Second Circuit law, habeas relief would not be warranted unless the state court's holding was also an unreasonable application of, or contrary to, clearly established *Supreme Court* precedent. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, *supra*. The Supreme Court has made clear that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396, 38 L. Ed.2d 368 (1973). This Court, sitting in habeas review, is tasked with inquiring "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 & n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

The Court's research has uncovered only one case in which the Supreme Court has found a "reasonable doubt" instruction to be unconstitutional. In *Cage v. Louisiana*, 498 U.S. 39 (1990) (*per curiam*), a state court instructed the jury in a murder trial that a reasonable doubt "must be such doubt as would give rise to a grave uncertainty . . . . It is an actual substantial doubt," *id.* at 40 (quoting *State v. Cage*, 554 So.2d 39, 41 (La. 1989)) (emphasis deleted). The Supreme Court said that "[i]t is plain . . . that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Id.* at 41. By contrast, in *Victor v. Nebraska*, *supra*, the Supreme Court upheld two instructions arguably similar to the one found to be defective in *Cage*. 511 U.S. at 6. This was in spite of the fact that both of the challenged instructions in *Victor* included phrases deemed to have been problematic in *Cage*, such as "a substantial doubt" and "proof to a

moral certainty." The Supreme Court concluded that, looking at the charge as a whole, "[t]here [wa]s no reasonable likelihood that the jurors who determined petitioners' guilt applied the instructions in a way that violated the Constitution." *Id.* at 22-23. The Supreme Court does not appear to have ever considered the challenged language at issue here–namely, the language linking "reasonable doubt" to a doubt for which a juror "can give a reason" or for which a reason "can be given."

The trial court's charge at issue here, when considered as a whole, leaves no doubt that the defendant must be presumed to be innocent and that the burden of proof rests with the prosecution throughout the trial. The trial court explained to the jury that "a doubt of guilt is not reasonable if instead of being based on the nature and quality of the evidence or the insufficiency of the evidence, it is based on matters outside the evidence or lack of it at the trial, if it's based on guesses or whims or speculations or some feelings in your stomach unrelated to the case. . . ." T.723. Moreover, the charge as whole rendered it unlikely that jurors would interpret the passage to require a higher degree of doubt than "reasonable" doubt for acquittal. *See Vargas*, 86 F.3d at 1278 ("The challenged language was immediately preceded and followed by language giving additional content to the phrase 'reasonable doubt,' emphasizing that the jurors' task was to engage in a careful, reasoned analysis of the evidence–or lack of evidence–presented. Accordingly, the jury was unlikely to have understood the challenged language to bear upon the degree or quantum of doubt necessary for acquittal, but rather, upon the appropriate basis for the formulation of a doubt sufficient for acquittal: as the charge properly stated, a 'reasonable' doubt is not 'just any kind of doubt, a mere whim or a guess or a feeling, or a surmise that the accused may not be guilty,' but a doubt that 'arises out of the credible evidence or the lack of credible

evidence.'"").

The Court rejects the proposition that the jurors might look to the defendant or to one

another to supply an articulable reason for doubt before voting to acquit. Viewing the charge in

its entirety, there is no reasonable likelihood that the jurors interpreted the instruction as shifting

the burden of proof away from the prosecution since other language clarified that the burden of

proof remained upon the prosecution throughout the trial and never shifted to the defendant and

that each and every element of the crimes submitted must be proved beyond a reasonable doubt

by the prosecution. *See id.*

As to the second alleged error, in which the trial court allegedly allowed the jury to base

a reasonable doubt on a "gut feeling," the section quoted above by Jackson does not make

grammatical sense as written. However, it appears that Jackson has omitted certain key language

from the trial court's instruction. The trial record reveals that the trial court gave instead the

following instruction:

> Reasonable doubts may not be based on emotional feeling or gut reaction or
> intuition or hunches, whatever terms you apply to guess work or subconscious
> feelings or inclinations, unless, of course, such feelings give rise to some
> thoughtful, some articulable, reasonable reflection on an evaluation of the
> evidence or lack of evidence in the case.

Respondent's Memorandum of Law at 8 (Docket #5) (quoting T.723). Respondent concedes that

the language to which Jackson objects, considered in isolation, may have been somewhat

inartful. However, Jackson ~~also~~ neglects to acknowledge that the trial court correctly instructed

the jury that the jury's "reasonable reflection" must be based "on an evaluation of the evidence

or lack of evidence in the case." Even if the charge was not a model of clarity, this is

nevertheless insufficient to deny Jackson his right to due process.

-10-

In sum, the Court cannot say that the asserted errors, taken separately or together, rendered the challenged reasonable doubt instruction constitutionally deficient. The Court notes that although it agrees with the Second Circuit that the language objected to is neither "prudent" nor "desirable," it cannot say that, "viewed in the context of the overall charge," *Cupp*, 414 U.S. at 147, "'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde*, 494 U.S. at 380). The Court is "mindful that [Jackson's] challenge to the trial court's instruction arises on habeas review, and [its] inquiry is whether the instruction is constitutional, not whether it is exemplary." *Vargas*, 86 F.3d at 1280. Accordingly, it is not within the Court's purview to grant habeas relief on this claim.

### ii.       Failure to object to prosecutorial misconduct

Jackson complains that trial counsel erred in failing to object to the prosecutor's summation. In particular, Jackson contends that the prosecutor improperly bolstered his witness' credibility by interjecting religion into the proceedings by asking the jurors if they believed that one of the prosecution's witnesses, Officer Ward, would "put his hands on the Bible and his career on the line, to get Norbert Jackson." T.687. Respondent contends that the prosecutor's remarks were fair comment in light of defense counsel's suggestions that the police had synchronized their testimonies and fabricated statements by Jackson in order to inculpate him in the crime. *See* Respondent's Memorandum of Law at 9-10 (citing T.665, 668, 673).

The Court agrees with Jackson that the prosecutor's reference to the Bible was plainly improper. *See*, *e.g.*, *George v. Edwards*, Nos. 01-CV-6481(JBW), 03-MISC-0066(JBW), 2003 WL 22964391, at *6 (E.D.N.Y. Sept. 4, 2003) (prosecutor related his "favorite Bible story" (the

Last Supper) and implicitly compared the defendant to Judas Iscariot and continued with the story even after an objection was sustained; district court held that the prosecutor came close to striking the type of "foul blow" decried by Justice Sutherland in *Berger v. United States*, 295 U.S. 78, 88 (1935), but nevertheless found that petitioner was not denied a fundamentally fair trial on the basis of those comments). However, the Court cannot find that trial counsel's failure to object to the remark amounted to constitutionally ineffective assistance. First of all, it is very possible that counsel made a reasonable strategic decision not to object to the comment in order to avoid drawing undue attention to it. *See, e.g.*, *Quinones v. Miller*, 2003 WL 21276429, at *50 n.78 (S.D.N.Y. June 3, 2003) (citing *Buehl v. Vaughn*, 166 F.3d 163, 176 (3d Cir.) (agreeing with state court's conclusion that "[b]ecause the [objectionable] statements were fleeting, . . . 'trial counsel may have wished to avoid emphasizing what might have gone relatively unnoticed by the jury.'"), *cert. dismissed*, 527 U.S. 1050 (1999); *United States v. Grunberger*, 431 F.2d 1062, 1069 (2d Cir. 1970) ("[I]t is understandable that a defense counsel may wish to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it [through an objection]."); *United States v. Corcoran*, 855 F. Supp. 1359, 1371 (E.D.N.Y. 1994) (holding that trial counsel made a "reasonable tactical decision" not to object to damaging testimony, as it "would merely serve to highlight the testimony"), *aff'd*, 100 F .3d 944 (2d Cir.), *cert. denied*, 517 U.S. 1228 (1996); *Gatto v. Hoke*, 809 F. Supp. 1030, 1039 (E.D.N.Y.) (holding that "counsel's failure to object to the prosecutor's summation represent[ed] his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them"), *aff'd mem.*, 986 F.2d 500 (2d Cir. 1992)).

Moreover, Jackson ultimately was not prejudiced at the trial level by defense counsel's

failure to object because, in the context of the trial as a whole, the remark was not so egregious as to warrant the judge declaring a mistrial; at most, the judge might have sustained an objection and issued a curative instruction. Given the strength of the evidence against Jackson, including his oral statement to the police, his apprehension seconds after the incident, and his identification by two of the victims, there is no reasonable likelihood that a properly-timed objection would have made a difference in the outcome of the trial.

Looking at the failure to object as a preservation issue, *see Grunberger*, 431 F.2d at 1068, the Court also finds that Jackson was not prejudiced at the appellate level by trial counsel's failure to object.[3] Although the state appellate court likely would have agreed that the prosecutor's remark was improper under state law, it nevertheless is unlikely that the court would have found that it rose to the level of constitutional error or reversible error as a matter of New York state law since it was a single remark in an otherwise fair proceeding. *See*, *e.g.*, *People v. Taylor*, 162 A.D.2d 175, 556 N.Y.S.2d 307 (App. Div. 1ˢᵗ Dept. 1990) (prosecutor should not have been allowed to quote from Bible during closing argument in manslaughter case; however, in absence of other egregious conduct, prosecutor's one reference to Bible was not so harmful as to deprive defendant of fair trial); *People v. Johnson*, 3 A.D.3d 581, 770 N.Y.S.2d 659 (App. Div. 2d Dept. 2004) ("While the prosecutor's references to religion during summation were improper, they were harmless in light of the overwhelming proof of the defendant's guilt[.]"). Therefore, "inasmuch as the summation comments did not rise to the level of constitutional error or reversible error under state law, petitioner was not prejudiced by counsel's

---

[3] The Court notes that, on direct appeal, appellate counsel did not raise any issues of ineffective assistance of trial counsel or prosecutorial misconduct, instead arguing a single point based on the prosecutor's failure to disclose certain material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

failure to object to them and counsel cannot be found to have been ineffective." *Arce v. Smith*,

710 F. Supp. 920, 926-27 (S.D.N.Y.), *aff'd*, 889 F.2d 1271 (2d Cir. 1989), *cert. denied*, 495 U.S.

937 (1990).[4]

### iii.    Failure to request a circumstantial evidence charge

Jackson contends that trial counsel was ineffective in failing to ask the trial judge to

instruct the jury on the nature of circumstantial evidence. *See*, *e.g.*, Petitioner's Reply at 14

(Docket #6). He concedes, however, "that no circumstantial evidence jury charge is required

when there is both direct and circumstantial evidence presented to the jury." *Id.*

Under New York law, a circumstantial evidence jury charge is only required, at the

defendant's request, when the evidence against a defendant is comprised solely of circumstantial

evidence. *E.g.*, *People v. Daddona*, 81 N.Y.2d 990, 992, 599 N.Y.S.2d 530, 615 N.E.2d 1014

(N.Y. 1993) ( "Whenever a case relies wholly on circumstantial evidence to establish all

elements of the charge, the jury should be instructed, in substance, that the evidence must

establish guilt to a moral certainty." ). Where, as here, a criminal indictment is supported with

both circumstantial and direct evidence, the court need not so instruct the jury. *Id.* Jackson's

argument that there was no direct evidence of guilt appears to be based on his contention that

there allegedly was no "direct positive identification of petitioner."  To the contrary, two of the

---

[4] The Court is nevertheless deeply troubled by the prosecutor's blatant attempt to bolster a witness's credibility by referring to his having taken an oath on the Bible. This is a violation of such a fundamental principle that the Court is certain that the prosecutor's remark was deliberate. Because the Court is only sitting in collateral review of this matter, it does not have the jurisdiction to judicially sanction a prosecutor or issue contempt penalties against him. However, the Court will take this opportunity to admonish the prosecutor to carefully review New York state's evidentiary law, the Federal Rules of Evidence, the ABA Model Code of Professional Responsibility, the ABA Model Rules of Professional Conduct, and the ABA Standards for Criminal Justice so that he may familiarize himself with the proper manner in which to conduct himself when prosecuting a case on behalf of the People of the State of New York.

victims (Lula Noble and Linda Noble) identified Jackson at a show-up very soon after his arrest.

Although one of the victims, Lula Noble, testified that she could not identify Jackson at two

subsequent show-ups because he was not wearing the same clothes that he was wearing at the

time of the crime, this did not necessarily negate her initial identification of Jackson. Moreover,

Jackson has not set forth any basis for assailing Linda Noble's identification of him. The law in

New York is clear that the weight to be accorded to the evidence presented, as well as the

resolution of issues as to identification and credibility, are primarily questions to be determined

by the jury, which saw and heard the witnesses. *E.g.*, *People v. Ulysse*, 25 A.D.3d 814, 807

N.Y.S.2d 649, 650-51 (App. Div. 2 Dept. 2006). Stated another way, simply because Jackson

contends that there were credibility issues with respect to one of the witness's identification

testimony, this does not somehow render the evidence "circumstantial." The witnesses'

identifications of Jackson constituted direct evidence, and it was for the jury to decide whether

the identifying witnesses were credible. Because Jackson was not entitled to a circumstantial

evidence charge as a matter of New York state law, he therefore was not prejudiced by trial

counsel's failure to request one. Having failed to show that trial counsel's omission resulted in

prejudice, Jackson cannot obtain habeas relief based on this claim. *See Strickland*, 466 U.S. at

697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both

components of the inquiry if the defendant makes an insufficient showing on one.").

**4.     Insufficiency of the evidence**

Jackson argues that trial evidence against him was insufficient to sustain his conviction.

The relevant question for this Court on Federal habeas review is whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002). Thus, Jackson "bears a very heavy burden" in challenging the legal sufficiency of the evidence in support of his state-court criminal conviction. *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997). On habeas review, this Court is not permitted to "'make its own subjective determination of guilt or innocence.'" *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402 (1993)).

Jackson primarily contends that the identification evidence against him was not adequate. *See* Petitioner's Reply at 15-16 (Docket #6). He argues that "[p]etitioner did not fit the descriptions of anyone given; that "[n]othing was found in the flight path petitioner supposedly took;" and "[n]o discarded clothing, no gun, or no proceeds from the crime scene" were found. Petitioner's Reply at 15 (Docket #6). With regard to the sufficiency of the identification testimony, as noted above, that was an issue properly resolved by the jury, and it is not this Court's province to second-guess the jury's decision. On habeas review, this Court must defer to the jury's "assessments of the weight of the evidence and the credibility of witnesses." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Furthermore, Jackson neglects to mention that there was other evidence of his guilt–namely, his knowing and voluntary oral statement to the police in which he admitted his involvement in the burglary.

Here, the jury chose to credit the prosecution witnesses' testimony regarding Jackson's involvement in the incident at issue. The jury is exclusively responsible for determining the credibility of the witnesses, and a habeas court may not revisit the fact-finder's credibility determinations. *Marshall v. Lonberger*, 459 U.S. 422, 432-35 (1983); *United States v. Strauss,*

999 F.2d 692, 696 (2d Cir. 1993). Jackson is essentially asking this Court to "'reassess the fact specific credibility judgments by [the jury] or . . . weigh conflicting testimony,'" *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (quoting *Anderson v. Senkowski*, 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992)), which it is not permitted to do. Looking at the evidence of record, this Court cannot say that the jury acted irrationally in finding that the proof against Jackson established his guilt beyond a reasonable doubt of the crimes charged. Accordingly, habeas relief cannot issue on this claim.

**5.     Ineffective assistance of appellate counsel**

Jackson contends that appellate counsel was ineffective in failing to argue on direct appeal that trial counsel provided constitutionally defective representation. A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)), *cert. denied*, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

As discussed above, the alleged omissions by trial counsel were not really errors at all. Thus, appellate counsel did not have any factual or legal bases for making a colorable argument premised on trial counsel's performance. Because a claim based on the ineffective assistance of trial counsel in all likelihood would have been summarily rejected on appeal, Jackson is unable

-17-

to prove prejudice: Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'" (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803)); *see also Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance."). Because Jackson cannot prove prejudice, it is unnecessary to address whether counsel's performance was deficient. *See Strickland*, 466 U.S. at 697 Accordingly, this claim does not warrant federal habeas relief.

## CONCLUSION

For the reasons stated above, petitioner Norbert Jackson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Jackon has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        September 12, 2006
             Buffalo, New York.

-18-